Dc4dcasp

Plea

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                          S2 13 Cr. 0478 (JGK)

5   HARRY CASTRO,

6              Defendant.

7   ------------------------------x

8
                                          December 4, 2013
9                                         5:06 a.m.

10
    Before:
11
                    HON. JOHN G. KOELTL,
12
                                          District Judge
13

14                        APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    BY:  DAMIAN WILLIAMS
17       Assistant United States Attorney

18  FEDERAL DEFENDERS OF NEW YORK INC.
         Attorneys for Defendant
19  BY:  PEGGY CROSS-GOLDENBERG

20

21

22

23

24

25
```

Dc4dcasp

Plea

1    THE CLERK:  United States of America versus Harry

2    Castro.

3           All parties, please states who they are for the

4    record.

5           MR. WILLIAMS:  Good afternoon, your Honor.  Damian

6    Williams for the government.

7           THE COURT:  Good afternoon.

8           MS. CROSS-GOLDENBERG:  And the Federal Defenders of

9    New York by Peggy Cross-Goldenberg for Mr. Castro.

10          Good afternoon, your Honor.

11          THE COURT:  Good afternoon.

12          I understand that the defendant has an application.

13          MS. CROSS-GOLDENBERG:  Yes, your Honor.

14          A Superseding Indictment has been filed in this case.

15   He has not actually been arraigned on that indictment, but we

16   have reached an agreement by which the government will accept a

17   plea to a lesser included charge.  Mr. Castro is prepared to

18   plead guilty to that lesser included charge at this time.

19          So I don't know if the Court actually wants to arraign

20   him first or if he can just enter the plea of guilty to the

21   lesser included charge.

22          THE COURT:  What I would like to do -- what I usually

23   do, if the parties agree, is I would incorporate the

24   arraignment on the Superseding Indictment together with the

25   allocution on the guilty plea.  And that has always made more

Dc4dcasp
                              Plea

1    sense to me because somehow it doesn't seem quite right to me

2    to simply arraign the defendant on a Superseding Indictment and

3    receive a plea of not guilty and then move to an allocution on

4    a guilty plea, particularly when the allocution on the guilty

5    plea goes through all of the questions to make sure that the

6    defendant is competent to plead, and he has done that after he

7    has just entered a plea of not guilty on the Superseding

8    Indictment.

9            So it makes more sense to incorporate the arraignment

10   on the Superseding Indictment together with the allocution on a

11   guilty plea to the Superseding Indictment, if the parties agree

12   with that.

13           MS. CROSS-GOLDENBERG:  Yes, I indeed do, your Honor.

14   In fact, I describe the other procedure as the kind of thing

15   that gives lawyers a bad name because it doesn't make sense to

16   me either.  So I think the government is OK with that process

17   also.

18           THE COURT:  Is that OK?

19           MR. WILLIAMS:  Yes, your Honor.

20           THE COURT:  All right.  And the plea is pursuant to a

21   plea agreement, right?

22           MS. CROSS-GOLDENBERG:  That's correct, your Honor.

23           THE COURT:  I have a November 26, 2013 letter from the

24   government to you, Ms. Cross-Goldenberg.  It's signed by

25   Mr. Williams and Ms. Dabbs.  It appears to be signed by

Dc4dcasp

Plea

1    Mr. Castro and yourself on December 4th of 2013.  The letter is

2    dated November 26, 2013.

3              Is that the plea agreement?

4              MS. CROSS-GOLDENBERG:  Yes, your Honor.

5              THE COURT:  OK.  I have marked that as Court Exhibit

6    1.

7              Mr. Fletcher, please administer the oath to the

8    defendant.

9              THE CLERK:  Counsel has asked that the defendant can

10   be seated for medical reasons.

11             THE COURT:  Fine.  The defendant can be seated.

12             MS. CROSS-GOLDENBERG:  Thank you, your Honor.

13             (The defendant was sworn)

14             THE CLERK:  Please state your name for the record.

15             THE DEFENDANT:  Harry Castro.

16             THE COURT:  You can be seated.

17             THE DEFENDANT:  Thank you.

18             THE COURT:  Mr. Castro, do you understand that you are

19   now under oath and that if you answer any of my questions

20   falsely, your false or untrue answers may later be used against

21   you in another prosecution for perjury or making a false

22   statement?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Tell me your full name, please.

25             THE DEFENDANT:  My name is Harry Castro.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

Dc4dcasp

Plea

1          THE COURT:  How old are you?

2          THE DEFENDANT:  59.

3          THE COURT:  How far did you go in school?

4          THE DEFENDANT:  I have a bachelor's degree.

5          THE COURT:  Are you a citizen of the United States?

6          THE DEFENDANT:  Yes, I am.

7          THE COURT:  Are you able to speak and understand

8    English?

9          THE DEFENDANT:  Yes.  Yes, I am.

10          THE COURT:  Are you now or have you recently been

11   under the care of a doctor or a psychiatrist?

12          THE DEFENDANT:  Yes, I have.

13          THE COURT:  Tell me about that, please.

14          THE DEFENDANT:  Well, I'm currently in treatment for

15   depression and anxiety and attention deficit disorder.

16          THE COURT:  All right.  Is there anything about those

17   conditions that interferes with your ability to understand

18   these proceedings and to consult with your lawyer?

19          THE DEFENDANT:  No, there is not.

20          THE COURT:  Do you take medication for those

21   conditions?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  What kind of medication do you take?

24          THE DEFENDANT:  Antianxiety pills, antidepressants,

25   and also for attention deficit disorder, I also take medication

Dc4dcasp

Plea

1 for that as well.  I believe my attorney has a list of the

2 medications.

3 　　　　MS. CROSS-GOLDENBERG:  I do have a list of his

4 medications, your Honor, I can hand up to the Court.

5 　　　　Mr. Castro also suffers from some physical ailments.

6 I don't know if the Court wants to inquire about those but --

7 　　　　THE COURT:  Sure.  What physical ailments?

8 　　　　And you can then read me the medications after

9 Mr. Castro goes through the physical conditions also for which

10 he sees a doctor.

11 　　　　THE DEFENDANT:  Well, I suffer from cancer, prostate

12 cancer.  I have been undergoing treatment for that, as well as

13 AIDS-related conditions.

14 　　　　THE COURT:  OK.  Thank you.  Is there anything about

15 those conditions that interferes with your ability to

16 understand these proceedings and consult with your lawyer?

17 　　　　THE DEFENDANT:  Not at this time.

18 　　　　THE COURT:  OK.  And, Ms. Cross-Goldenberg, you said

19 you have a list of the defendant's medications.  Do you wand to

20 read them for the record?

21 　　　　MS. CROSS-GOLDENBERG:  Sure, your Honor.  If the Court

22 would like, I provided a list to the court reporter so he will

23 have the spelling, and to the government.

24 　　　　But his medications are Lorazepam, Ritalin, Norvir,

25 Reyataz, Truvada, Risperdal, Zovirax and Celexa.  There may be

Dc4dcasp

Plea

1    a couple of others that he doesn't take on a regular basis, but

2    we have discussed whether any of them affect his ability to

3    understand and follow these proceedings and they do not.

4              THE COURT:  Is that right, Mr. Castro?

5              THE DEFENDANT:  Yes, it is.

6              THE COURT:  So there is nothing about any of those

7    medications that interferes with your ability to understand

8    these proceedings and to consult with your lawyer, is that

9    correct?

10              THE DEFENDANT:  Correct.

11              THE COURT:  All right.  Have you ever been treated or

12    hospitalized for any mental illness or any type of addiction,

13    including drug or alcohol addiction?

14              You've seen a doctor, I appreciate, for depression and

15    ADD.

16              THE DEFENDANT:  No, I haven't.

17              THE COURT:  Other than that, have you ever been

18    treated or hospitalized for any mental illness or any type of

19    addiction, including drug or alcohol addiction?

20              THE DEFENDANT:  No, I have not.

21              THE COURT:  OK.  Now, in the past 24 hours, have you

22    taken any drugs, medicine or pills, or have you drunk any

23    alcohol?

24              THE DEFENDANT:  Yes, I have.

25              THE COURT:  Is it some of the medication that you have

Dc4dcasp
                              Plea

 1   described to me?

 2            THE DEFENDANT:  That is right.

 3            THE COURT:  Is there anything about that medication

 4   that interferes with your ability to understand these

 5   proceedings or to consult with your lawyer?

 6            THE DEFENDANT:  No, there aren't.

 7            THE COURT:  Is your mind clear today?

 8            THE DEFENDANT:  Yes.

 9            THE COURT:  Are you feeling all right today?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Do either counsel have any doubt as to the

12   defendant's competence to waive indictment, agree to proceed by

13   information -- I'm sorry.

14            Do either counsel have any doubt as to the defendant's

15   competence to plead at this time?

16            MR. WILLIAMS:  No, your Honor.

17            MS. CROSS-GOLDENBERG:  No, your Honor.

18            THE COURT:  All right.  Mr. Castro,

19   Ms. Cross-Goldenberg has informed me that you wish to enter a

20   plea of guilty to the Superseding Indictment.  Is that what you

21   wish to do?

22            THE DEFENDANT:  Yes, your Honor.

23            THE COURT:  Have you had a full opportunity to discuss

24   your case with Ms. Cross-Goldenberg and to discuss the

25   consequences of entering a plea of guilty?

Dc4dcasp

Plea

1    THE DEFENDANT:  Yes, I have.

2    THE COURT:  Are you satisfied with

3  Ms. Cross-Goldenberg and her representation of you?

4    THE DEFENDANT:  Yes, I am.

5    THE COURT:  On the basis of Mr. Castro's responses to

6  my questions and my observations of his demeanor, I find that

7  he is fully competent to enter an informed plea at this time.

8    Now, Mr. Castro, before I accept any plea from you,

9  I'm going to be asking you various questions.  My questions are

10  intended to satisfy me that you wish to plead guilty because

11  you are in fact guilty and that you fully understand the

12  consequences of your plea and, furthermore, that you are

13  pleading guilty knowingly and voluntarily and that there is an

14  independent basis in fact for your plea.

15    Do you understand that?

16    THE DEFENDANT:  Yes, your Honor.

17    THE COURT:  I am now going to describe to you certain

18  rights that you have under the Constitution and laws of the

19  United States which rights you will be giving up if you enter a

20  plea of guilty.  Please listen to me very carefully.  If there

21  is anything that I say that you don't understand, please ask me

22  to stop.  Either I or Ms. Cross-Goldenberg will explain it to

23  you more fully.  All right?

24    THE DEFENDANT:  Yes, your Honor.

25    THE COURT:  Now, Mr. Castro, under the Constitution

Dc4dcasp
Plea

 1    and laws of the United States, you have a right to a speedy and

 2    public trial by a jury on the charges against you which are

 3    contained in the Superseding Indictment.

 4              Do you understand that?

 5              THE DEFENDANT:  Yes, I do.

 6              THE COURT:  If there were a trial, you would be

 7    presumed to be innocent, and the government would be required

 8    to prove you guilty by competent evidence and beyond a

 9    reasonable doubt.  You would not have to prove that you were

10    innocent at trial.

11              Do you understand that?

12              THE DEFENDANT:  Yes, your Honor.

13              THE COURT:  If there were a trial, a jury composed of

14    12 people selected from this district would have to agree

15    unanimously that you were guilty.

16              Do you understand that?

17              THE DEFENDANT:  Yes, I do, your Honor.

18              THE COURT:  If there were a trial, you would have the

19    right to be represented by a lawyer, and if you could not

20    afford a lawyer, a lawyer would be provided to you free of

21    cost.

22              Do you understand that?

23              THE DEFENDANT:  Yes, I do, your Honor.

24              THE COURT:  In fact, Mr. Castro, you have a right to

25    be represented by a lawyer at trial and at every other stage of

Dc4dcasp
                                    Plea

1    the proceedings, and if you cannot afford a lawyer, a lawyer

2    would be provided to you free of cost.

3            Do you understand that?

4            THE DEFENDANT:  Yes, I do, your Honor.

5            THE COURT:  If there were a trial, you would have the

6    right to see and hear all of the witnesses against you, and

7    your attorney could cross-examine them.  You would have a right

8    to have your attorney object to the government's evidence and

9    offer evidence on your behalf, if you so desired.  And you

10   would have the right to have subpoenas issued or other

11   compulsory process used to compel witnesses to testify in your

12   defense.  And you would not be required to testify.

13           Do you understand all of that?

14           THE DEFENDANT:  Yes, your Honor.  I do.

15           THE COURT:  Mr. Castro, if there were a trial, you

16   would have the right to testify if you wanted to, but no one

17   could force you to testify if you didn't want to.  And,

18   furthermore, no inference or suggestion of guilt could be drawn

19   if you chose not to testify at trial.

20           Do you understand that?

21           THE DEFENDANT:  Yes, I do, your Honor.

22           THE COURT:  Mr. Castro, do you understand each and

23   every one of the rights that I've described to you?

24           THE DEFENDANT:  Yes, I do.

25           THE COURT:  Do you have any questions about any of

Dc4dcasp
Plea

1    those rights?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Do you understand that by entering a plea

4    of guilty today, you are giving up each and every one of those

5    rights, that you are waiving those rights, and that you will

6    have no trial?

7              THE DEFENDANT:  Yes, I do, your Honor.

8              THE COURT:  Do you understand that you can change your

9    mind right now and refuse to enter a plea of guilty?  You don't

10   have to enter this plea if you don't want to for any reason at

11   all.  Do you understand that completely?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  Now, Mr. Castro, you've received a copy of

14   the Superseding Indictment against you, is that correct?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Have you read it?

17             THE DEFENDANT:  Yes, I have.

18             THE COURT:  Have you discussed it with your lawyer?

19             THE DEFENDANT:  Yes, I have.

20             THE COURT:  Do you understand what you are charged

21   with in the Superseding Indictment?

22             THE DEFENDANT:  Yes, I do.

23             THE COURT:  Do you want me to -- actually, I'm going

24   to read the Superseding Indictment aloud to you in open court,

25   in any event, because I want to assure myself that you

Dc4dcasp
                              Plea

1    understand what you are charged with in the Superseding

2    Indictment and what the government would be required to prove

3    beyond a reasonable doubt.

4             The Superseding Indictment is the United States of

5    America against Harry Castro, James Halsey IV, John Cantwell,

6    the defendants:

7             "Count One

8             "The Grand Jury charges:

9             "From at least in or about 2012 up to and including in

10   or about February 2013, in the Southern District of New York

11   and elsewhere, Harry Castro, James Halsey IV and John Cantwell,

12   the defendants, and others known and unknown, intentionally and

13   knowingly did combine, conspire, confederate and agree together

14   and with each other to violate the narcotics laws of the United

15   States.

16            "It was a part and an object of the conspiracy that

17   Harry Castro, James Halsey IV and John Cantwell, the

18   defendants, and others known and unknown, would and did

19   distribute and possess with intent to distribute a controlled

20   substance, in violation of Title 21, United States Code,

21   Section 841(a)(1).

22            "The controlled substance involved in the offense was

23   50 grams and more of methamphetamine, its salts, isomers, and

24   salts of its isomers, in violation of Title 21, United States

25   Code, Section 841(b)(1)(A), in violation of Title 21, United

Dc4dcasp
Plea

1    States Code, Section 846."

2              And then there is a forfeiture allegation.

3              "As a result of committing the offense charged in

4    Count One of this Indictment, Harry Castro, James Halsey IV and

5    John Cantwell, the defendants, shall forfeit to the United

6    States, pursuant to Title 21, United States Code, Section 853,

7    any and all property constituting or derived from any proceeds

8    the defendants obtained directly or indirectly as a result of

9    the offense and any and all property used or intended to be

10   used in any manner or part to commit and to facilitate the

11   commission of the offense charged in Count One of this

12   Indictment.

13             "Substitute Assets Provision

14             "If any of the above-described forfeitable property,

15   as a result of any act or omission of Harry Castro, James

16   Halsey IV and John Cantwell, the defendants:

17             "a. cannot be located upon the exercise of due

18   diligence;

19             "b. has been transferred or sold to, or deposited

20   with, a third person;

21             "c. has been placed beyond the jurisdiction of the

22   Court;

23             "d. has been substantially diminished in value; or

24             "e. has been commingled with other property which

25   cannot be subdivided without difficulty,

Dc4dcasp
                                    Plea

1              "it is the intent of the United States, pursuant to 21

2       U.S.C. Section 853(p), to seek forfeiture of any other property

3       of the defendants up to the value of the above forfeitable

4       property.

5              "(Title 21, United States Code, Section 853.)"

6              The Superseding Indictment is signed by the Foreperson

7       and Preet Bharara, the United States Attorney.

8              So, do you understand, Mr. Castro, that is what you

9       are charged with in the Superseding Indictment?

10             THE DEFENDANT:  Yes, I do.

11             THE COURT:  OK.  Do you understand that if you did not

12      plead guilty, the government would be required to prove each

13      and every part or element of the charge against you beyond a

14      reasonable doubt at trial?

15             THE DEFENDANT:  Yes, I do understand that.

16             THE COURT:  Do you understand that at trial, the

17      government would be required to prove beyond a reasonable

18      doubt, first, the existence of the conspiracy charged in the

19      indictment, that is, an agreement or understanding to violate

20      those provisions of the law that make it illegal to distribute

21      narcotics or possess narcotics with the intent to distribute

22      them; second, that you, the defendant, knowingly became a

23      member of the conspiracy, that is, that you knowingly

24      associated yourself with the conspiracy and participated in the

25      conspiracy to distribute or possess with the intent to

Dc4dcasp

Plea

distribute narcotics; and, finally, that the narcotics involved

in the conspiracy was methamphetamine?  Do you understand that

the government would be required to prove all of that beyond a

reasonable doubt at trial?

THE DEFENDANT:  Yes, I do.

THE COURT:  And in describing to you the elements of

the offense, I have taken into account that you are pleading

guilty to a lesser included offense than the one that is

actually charged in the Indictment.  So in listing the elements

of the offense, I have listed that the narcotics involved in

the conspiracy was methamphetamine rather than any specific

amount of methamphetamine, because that's a lesser included

charge than the one that's actually in the Indictment, which

alleges that the narcotics involved in the conspiracy was

50 grams or more of methamphetamine.

So to prove the lesser included offense, the

government would be required to prove beyond a reasonable doubt

at trial only that the narcotics involved in the conspiracy was

methamphetamine.

Do you understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  Do you understand?

THE DEFENDANT:  Yes, I do, your Honor.  Yes.

THE COURT:  OK.  Now, with respect to the lesser

included offense, to which the parties advise you are pleading

Dc4dcasp
Plea

1  guilty, do you understand that the maximum term of imprisonment

2  is 20 years' imprisonment, a maximum term of lifetime

3  supervised release, and a mandatory minimum term of three

4  years' supervised release, a fine of the greatest of $1 million

5  or twice the gross pecuniary gain derived from the offense or

6  twice the gross pecuniary loss to persons other than yourself

7  as a result of the offense, and a $100 mandatory special

8  assessment?  Do you understand that is the maximum penalty for

9  the crime to which you are entering a plea of guilty as well as

10  the mandatory minimum term of supervised release?

11          THE DEFENDANT:  Yes, I do, your Honor.

12          THE COURT:  Do you also understand that when I talk

13  about "supervised release," supervised release means that you

14  will be subject to monitoring when you are released from prison

15  and that the monitoring is to be under terms and conditions

16  which could lead to reimprisonment without a jury trial if you

17  violate them?

18          THE DEFENDANT:  Yes.  Yes, your Honor.

19          THE COURT:  And do you understand that if you violated

20  the terms of supervised release and were sentenced to prison,

21  you could be sentenced to prison for the entire term of

22  supervised release without any credit for any time you had

23  already spent on supervised release?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Do you also understand that as part of

Dc4dcasp

Plea

1   your sentence, I can also order restitution to any person

2   injured as a result of your criminal conduct?

3             THE DEFENDANT:  Yes, your Honor.

4             THE COURT:  In reading the Indictment to you, I read

5   the forfeiture allegation in the Indictment.  So do you

6   understand that as part of your sentence I can also order

7   forfeiture?

8             THE DEFENDANT:  Yes, your Honor.

9             THE COURT:  Mr. Castro, do you understand that if I

10   accept your guilty plea and adjudge you guilty, that

11   adjudication may deprive you of valuable civil rights such as

12   the right to vote, the right to hold public office, the right

13   to serve on a jury, and the right to possess any kind of

14   firearm?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  Now, Mr. Castro, under current law there

17   are Sentencing Guidelines that judges must consult in

18   determining your sentence.  You have spoken to your lawyer

19   about the Sentencing Guidelines, haven't you?

20             THE DEFENDANT:  Yes, I have.

21             THE COURT:  Do you understand that I, as the

22   sentencing Court, will not be able to determine your guideline

23   sentencing range until the Probation Department has completed a

24   presentence report and after you and your lawyer and the

25   government have had an opportunity to review that report, to

Dc4dcasp
                              Plea

1    challenge anything contained in the report, and then to speak

2    on your behalf -- well and after you, your lawyer and the

3    government have had an opportunity to file any objections to

4    the presentence report and after I have had an opportunity to

5    consider those objections?  Do you understand that?

6             THE DEFENDANT:  Yes, I do, your Honor.

7             THE COURT:  And do you also understand that even after

8    it is determined what the basic guideline sentencing range is

9    that applies in your case, I have the authority in some

10   circumstances to depart upward or downward from the sentence

11   that is otherwise called for by the guidelines?  Do you

12   understand that?

13            THE DEFENDANT:  Yes, your Honor.

14            THE COURT:  And even after that guidelines' sentencing

15   range is determined, taking into account any upward or downward

16   departures, I must then look to various statutory factors to

17   make a final determination of what the appropriate and

18   reasonable sentence is in your case.

19            Do you understand that?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Do you also understand that if you are

22   sentenced to prison, parole has been abolished and you will not

23   be released any earlier on parole?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Do you understand that if your lawyer or

Dc4dcasp
Plea

1   anyone else has attempted to estimate or predict what your

2   sentence will be, that their estimate or prediction could be

3   wrong?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  No one, Mr. Castro -- not your lawyer, not

6   the government -- no one can or should give you any assurance

7   of what your sentence will be since that sentence can only be

8   determined after the Probation Department has completed the

9   presentence report, after I have ruled on any challenges to the

10  report, and after I have determined what the appropriate and

11  reasonable sentence is in your case.

12         Do you understand that?

13         THE DEFENDANT:  Yes, I do.

14         THE COURT:  And do you also understand that even if

15  your sentence is different from what your lawyer or anyone else

16  told you that it might be, or if it's different from what you

17  expect it to be, you will still be bound by your guilty plea

18  and you will not be allowed to withdraw your plea of guilty?

19  Do you understand that?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Now, Mr. Castro, I have been given the

22  plea agreement, which you heard me talk about at the outset

23  with your lawyer.  It is a November 26, 2013 letter to

24  Ms. Cross-Goldenberg from the government, which appears to be

25  signed by you and Ms. Cross-Goldenberg today, December the 4th.

Dc4dcasp

Plea

1    It's marked as Court Exhibit 1.

2              Have you signed this plea agreement?

3              THE DEFENDANT:  Yes, I have.

4              THE COURT:  Did you read the agreement before you

5    signed it?

6              THE DEFENDANT:  Yes, I did.

7              THE COURT:  Did you discuss it with your lawyer before

8    you signed it?

9              THE DEFENDANT:  Yes, I did.

10             THE COURT:  Did you fully understand the agreement

11   before you signed it?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  Does this letter agreement constitute your

14   complete and total understanding of the entire agreement

15   between the government, your lawyer, and you?

16             THE DEFENDANT:  Yes, I do.

17             THE COURT:  Is everything that you understand about

18   your plea and your sentence contained in this plea agreement?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Has anything been left out?

21             THE DEFENDANT:  Not to my knowledge, no.

22             THE COURT:  Has anyone offered you any inducements or

23   threatened you or forced you to plead guilty or to enter into

24   this plea agreement?

25             THE DEFENDANT:  No.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Dc4dcasp

Plea

1    THE COURT:  There is a provision of the plea agreement

2    that provides:  It is agreed that the defendant will not file a

3    direct appeal nor bring a collateral challenge, including, but

4    not limited to, an application under Title 28, United States

5    Code, Section 2255 and/or Section 2241, nor seek a sentence

6    modification pursuant to Title 18, United States Code, Section

7    3582(c) of any sentence within or below the stipulated

8    guidelines' range of 37 to 46 months' imprisonment even if the

9    Court denies the defendant's application for safety valve

10   relief.

11        So do you understand, Mr. Castro, that if I sentence

12   you to 46 months' imprisonment, or less, you had given up your

13   right to appeal or otherwise challenge any such sentence in any

14   proceeding, including any habeas corpus proceeding?  Do you

15   understand that?

16        THE DEFENDANT:  Yes, I do.

17        THE COURT:  Do you also understand that the Court is

18   not bound by the plea agreement or by any of the provisions or

19   stipulations in the plea agreement?  Do you understand that?

20        THE DEFENDANT:  Yes, I do.

21        THE COURT:  Do you understand that the Court must make

22   an independent determination of the appropriate sentence in

23   your case, and even if that sentence differs from anything

24   that's contained in the plea agreement, you will still be bound

25   by your guilty plea and you will not be allowed to withdraw

Dc4dcasp

Plea

1     your plea of guilty?  Do you understand that?

2                 THE DEFENDANT:  Yes.  Yes, your Honor.

3                 THE COURT:  Ms. Cross-Goldenberg, do you know of any

4     valid defense that would prevail at the trial of Mr. Castro?

5                 MS. CROSS-GOLDENBERG:  No, your Honor.

6                 THE COURT:  Do you know of any reason that Mr. Castro

7     should not be permitted to plead guilty?

8                 MS. CROSS-GOLDENBERG:  No, your Honor.

9                 THE COURT:  Mr. Castro, tell me what you did in

10    connection with the offense to which you are entering a plea of

11    guilty.

12                THE DEFENDANT:  In February of 2013, I agreed with

13    others to sell methamphetamine.

14                I know it was wrong and I -- I am advised that it was

15    wrong, and I am very sorry for that.

16                THE COURT:  All right.  Did you do any act or, to your

17    knowledge, did any of your co-conspirators do any act in

18    Manhattan or the Bronx or Westchester to further the conspiracy

19    to sell methamphetamine?

20                THE DEFENDANT:  To my knowledge, just in Manhattan.

21                THE COURT:  You did something in Manhattan?

22                THE DEFENDANT:  It was in Manhattan, correct, your

23    Honor.

24                THE COURT:  OK.  What did you do in Manhattan?

25                THE DEFENDANT:  Well, I agreed to sell methamphetamine

Dc4dcasp
                              Plea

1   with others.

2           THE COURT:  You entered into the agreement in

3   Manhattan?

4           THE DEFENDANT:  Correct, your Honor.

5           THE COURT:  OK.  And when you did these acts, did you

6   know that what you were doing was wrong and illegal?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  You can talk to your lawyer.  Do you have

9   any question about that?

10          THE DEFENDANT:  No, I don't.

11          THE COURT:  So when you did these acts, did you know

12  that what you were doing was wrong and illegal?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  OK.  Does the government want me to ask

15  any other questions of the defendant?

16          MR. WILLIAMS:  No, your Honor.

17          THE COURT:  OK.  Tell me what the government's

18  evidence would be at trial.

19          MR. WILLIAMS:  Your Honor, the government would offer

20  both law enforcement and testimony from a confidential

21  informant, among others, about the events that led to the

22  arrest back in February of 2013.  Furthermore, there is

23  physical evidence of drug trafficking, including scales and

24  methamphetamine that was seized on the day of the arrest and

25  subsequent to the arrest.

Dc4dcasp

                                    Plea

1            THE COURT:  OK.

2            MR. WILLIAMS:  And that would prove beyond a

3    reasonable doubt that the crimes charged in the Indictment were

4    in fact committed.

5            THE COURT:  By this defendant?

6            MR. WILLIAMS:  Correct, your Honor.

7            THE COURT:  OK.  Mr. Castro, how do you plead to the

8    charge against you in Count One of the Superseding Indictment,

9    guilty or not guilty?

10            THE DEFENDANT:  Guilty.

11            THE COURT:  Are you pleading guilty because you are in

12    fact guilty?

13            THE DEFENDANT:  Yes, I am.

14            THE COURT:  Are you pleading guilty voluntarily and of

15    your own free will?

16            THE DEFENDANT:  Yes, I am.

17            THE COURT:  Before I finally accept the defendant's

18    plea, Ms. Cross-Goldenberg, do you want me to ask any other

19    questions of the defendant?

20            MS. CROSS-GOLDENBERG:  No, your Honor.  Thank you.

21            THE COURT:  Do you know of any reason that I should

22    not accept his plea?

23            MS. CROSS-GOLDENBERG:  No, your Honor.

24            THE COURT:  Mr. Williams, before I finally accept the

25    defendant's plea, does the government want me to ask any other

Dc4dcasp
Plea

1    questions of the defendant?

2                MR. WILLIAMS:  No, your Honor.

3                THE COURT:  Does the government know of any reason

4    that I should not accept his plea?

5                MR. WILLIAMS:  No, your Honor.

6                THE COURT:  All right.  Mr. Castro, because you

7    acknowledge that you are guilty as charged in Count One of the

8    Superseding Indictment, because I find that you know your

9    rights and are waiving them knowingly and voluntarily, because

10    I find that your plea is entered knowingly and voluntarily and

11    is supported by an independent basis in fact containing each of

12    the essential elements of the offense, I accept your guilty

13    plea, and I adjudge you guilty of the offense to which you have

14    pleaded.

15                Mr. Castro, the Probation Department will now prepare

16    the presentence report to assist me in sentencing you.  You

17    will be interviewed by the Probation Department.  It is very

18    important that the information you provide to the Probation

19    Department be truthful and accurate.  The presentence report is

20    very important to me in my decision as to what your sentence

21    will be.  You and your lawyer will have the opportunity to

22    review the presentence report, to challenge anything contained

23    in the report, and then to speak on your behalf at sentencing.

24                THE CLERK:  March 14, 10 o'clock.

25                THE COURT:  How about March 14th at 10 a.m.?

Dc4dcasp
                                    Plea

 1              MR. WILLIAMS:  That is fine for the government, your

 2      Honor.

 3              MS. CROSS-GOLDENBERG:  That's fine with us, your

 4      Honor.  Thank you.

 5              THE COURT:  OK.  Sentencing March 14th, 2014, at

 6      10 a.m.

 7              What is the bail status of the defendant?

 8              MR. WILLIAMS:  I'm sorry, your Honor?

 9              THE COURT:  What is the bail status of the defendant?

10              MR. WILLIAMS:  The defendant is on bail, your Honor.

11              MS. CROSS-GOLDENBERG:  He was released, your Honor, on

12      a $10,000 personal recognizance bond cosigned by one of his

13      brothers.  I have a copy of the bond if the Court wants to see

14      it.

15              He has been fully complying with all of his bail

16      conditions since his release in February, and we would ask that

17      they continue.

18              THE COURT:  OK.  Any other applications with respect

19      to bail?

20              MR. WILLIAMS:  Not from the government.

21              THE COURT:  Isn't this --

22              MR. WILLIAMS:  I don't know if it is presumptively

23      mandatory --

24              THE COURT:  I'm sorry?

25              MR. WILLIAMS:  I don't know if remand is presumptively

Dc4dcasp
                            Plea

1    mandatory.

2               THE COURT:  You don't?

3               MS. CROSS-GOLDENBERG:  Your Honor, in light of the

4    whole -- even if the government were seeking remand, I think

5    there are exceptional circumstances here.

6               THE COURT:  Yes.  OK.  First.

7               (Pause)

8               OK.  The government is not seeking remand.

9               Is it a mandatory case?  Yes, it appears to be a

10   mandatory case.  The offense is under the Controlled Substances

11   Act.  The sentence -- the maximum term of imprisonment is ten

12   years or more.

13              Is there a safety valve?  Yes, for exceptional

14   circumstances.

15              The parties should certainly have addressed this prior

16   to the entry of the guilty plea.

17              I make it a practice that, you know, if a defendant

18   should -- a defendant should not be unadvised of what the

19   statute provides, and the government should give the advice,

20   counsel should give the advice, and the Court has an obligation

21   to follow the statute not only in those cases where the

22   government wants to remand but the government should be

23   following a policy that it follows the statute, and so it

24   should be not selecting among defendants but, rather, following

25   the statute.  And I had thought that had become the government

Dc4dcasp

Plea

1    policy after issues developed over the selective use of that

2    provision.  And the Court of Appeals has plainly said, you

3    know, that exceptional circumstances are limited.

4         Now, based on this case, this may be a case of

5    exceptional circumstances based on the defendant's physical

6    condition, if nothing else.  What would exceptional

7    circumstances be?  Exceptional circumstances may include a

8    situation where the Court at the time of sentence may not

9    impose a sentence of imprisonment because if the Court were not

10   to impose a sentence of imprisonment, sending the defendant to

11   prison pending sentence would not be reasonable, and that is

12   plainly an exceptional circumstance if the Court in good faith

13   believes that that's a possibility.  But, on the other hand, if

14   it were clear that the defendant were going to be sentenced to

15   prison, then it would be difficult to say that this is a case

16   of exceptional circumstances.

17        My observations, after listening to the defendant and

18   observing the defendant, is there is a possibility, despite the

19   fact that the parties have a plea agreement which says that the

20   there is a guidelines' sentencing range -- not binding on the

21   Court -- which provides for a term of imprisonment.  But I'll

22   certainly listen to an argument that this is a case of

23   exceptional circumstances.  And, you know, if I thought that

24   there were an insufficient showing of exceptional

25   circumstances, I wouldn't remand a defendant who had no advice

Dc4dcasp

Plea

 1    with respect to that before coming into court; I would simply

 2    put it over.

 3              So, Ms. Cross-Goldenberg.

 4              MS. CROSS-GOLDENBERG:  Thank you, your Honor.

 5         I can address what I think are the exceptional

 6    circumstances.  I have some materials which have been provided

 7    to the government before we came today regarding Mr. Castro's

 8    health, and I am happy to go into those as well.

 9              THE COURT:  Did you anticipate this as an issue, or

10    not?  Or don't you want me to ask?

11              MS. CROSS-GOLDENBERG:  Your Honor, this is a case

12    where I think that there clearly are exceptional circumstances,

13    and so I am hopeful that the Court will agree with me.  And I

14    think, you know, the way that the Court phrased the issue I

15    think is a very good way to look at it.  And I think there are

16    two reasons -- two sort of categories of reasons why it is

17    likely that there may not be a jail term imposed in this case

18    at all.

19         The first is the sort of categorical circumstances in

20    which we find ourselves which resulted in this plea agreement

21    to begin with.  And I think -- I don't want to speak for

22    Mr. Williams' office, but to the extent that there is a policy

23    of seeking remand at this stage of a case, I think that the

24    Holder memo and the position that the Attorney General has

25    taken with respect to first offenders in nonviolent, smalltime

Dc4dcasp
Plea

1  drug cases and the reasons why imprisonment is not a good

2  policy in those cases, I know that's what led to the plea to

3  the lesser included charge here as a mechanism of relieving

4  this case from the mandatory minimum framework.  Right?

5          So I think categorically that is a signal from the

6  Department of Justice that there are cases, despite what the

7  guidelines may recommend, where jail is not appropriate in

8  first-time, you know, low-level, nonviolent drug offenses, and

9  that is the kind of case that we have right now.

10         I think that the statute clearly has not caught up

11 with that, but I think that the signal from the Justice

12 Department and from the Attorney General, it's obviously been

13 an issue that's been brewing for years and certainly first in

14 the crack cocaine realm but sentences have been ameliorated

15 over time, but this really is a sea change that constitutes an

16 exceptional circumstance and that I think in light of the facts

17 of this case make it likely that a jail sentence will not be

18 imposed.

19         And I'm not presuming what the Court will do, and I

20 don't mean to speak for your Honor, but I think the Court used

21 the word "reasonable," right?  That it's, I think, reasonable

22 on these facts to think that there may be a non-jail sentence

23 thereby making remand at this stage unreasonable.

24         So that is the sort of general point with respect to

25 this kind of case and this kind of plea agreement.

Dc4dcasp

                                    Plea

1           With respect to Mr. Castro in particular, your Honor,

2      he mentioned to the Court some of his health conditions.  And

3      I'm going to run through some things, and if the Court wants

4      documentation, then I would ask that we put it off and come

5      back --

6           THE COURT:  No.  I'll accept your representations.

7           MS. CROSS-GOLDENBERG:  The first, your Honor, is

8      Mr. Castro's AIDS.  He has been sort of up and down in his T

9      cell count and his fight against the illness.  Just last month

10     his doctors told him that his blood count has dipped below the

11     sort of threshold between HIV and AIDS, and he has been getting

12     progressively worse I think in large part due to the stress of

13     this case.  But I don't have those results from November.  But

14     his doctors did tell him that recently.

15          Although I have a list of his medications, I don't

16     have his current dosages and actual treatment regimen with me,

17     so I think remanding him without all of that detail I think

18     would actually put his health in grave jeopardy.  Even though I

19     note the BOP's position would be we can treat inmates with

20     AIDS, I still think it would be detrimental to his health at

21     this stage without any planning by his doctors in terms of that

22     treatment.

23          THE COURT:  By the way, I misspoke earlier.  In

24     describing defendant's condition, I thought he said ADD rather

25     than AIDS.

Plea

1          MS. CROSS-GOLDENBERG:  He said both, your Honor.  He

2     has -- when he listed his sort of mental health issues, he told

3     you about his depression, his anxiety, his ADD.  That's all

4     sort of factored in.

5          But he also -- and I think the fourth, fifth and sixth

6     medications that I read are his -- those are his HIV/AIDS

7     treatments.

8          The more unique issue and in some ways I think the

9     more pressing issue for why imprisonment would be really

10    disastrous in this case has to do with Mr. Castro's prostate

11    issues.  He had prostate surgery -- and this is information

12    that I've shared with the government.  He had prostate surgery.

13    It was unsuccessful and they sort of, excuse me, to put it

14    simply, botched the surgery.

15         Shortly before his arrest in this case, he underwent

16    sort of a surgery that was designed to repair some of the

17    damage that was done to his prostate, and there was a device

18    implanted near his prostate called a sling, which is sort of

19    what it sounds like.  And I have a sort of writeup on it which

20    I can hand up to the Court --

21         THE COURT:  No.  That's all right.  I will take your

22    representation.

23         MS. CROSS-GOLDENBERG:  It is designed to sort of

24    support him internally because he was having bladder control

25    issues, leakage, things like that.  The sling also

Dc4dcasp
Plea

1  malfunctioned, and when he underwent surgery shortly before his

2  arrest --

3          That was the surgery right before, right?

4          THE DEFENDANT:  Yes.

5          MS. CROSS-GOLDENBERG:  -- to remove it, it turned out

6  that his own skin actually had grown around this device that

7  was implanted so they couldn't remove it.  So now he has this

8  device in him that pulls painfully and uncomfortably and that

9  can't be removed because his own body has sort of grown around

10 it.

11         The issues of incontinence, bladder control, not to

12 mention the pain, all persist.  And I think not only would that

13 make the conditions of confinement generally more harsh than

14 will be necessary to achieve the statutory sentencing

15 objectives, I think it also makes him very vulnerable in

16 prison.  I mean, in terms of -- you know, his HIV/AIDS alone,

17 but the incontinence and that sort of constant need for medical

18 issues I think really will present a situation where he will be

19 quite vulnerable in prison.  And I think, under Section

20 3553(a), that will be a very powerful reason based on his

21 history and characteristics for the Court to vary from the

22 guideline range.

23         Again, I can give the Court more details about it if

24 the Court wants, but those are the two sort of particular to

25 Mr. Castro's health, the two exceptional circumstances that I

Dc4dcasp
Plea

1    think not only will support a nonjail sentence in the end but

2    at this stage of the case counsel against remand and really do

3    make this an exceptional case.

4           And when you combine that with the Attorney General's

5    position and, quite frankly, Mr. Castro's performance on bail,

6    you know, when you think about the regular bail

7    circumstances -- he is not a risk of flight.  He doesn't pose a

8    danger to the community.  He has several times -- actually, I

9    think, three or four times been granted permission first by a

10   magistrate judge and then by this Court to travel to Florida to

11   see his mother, to Boston to see his brother.  He actually just

12   got back yesterday, I think.  He was in Boston for

13   Thanksgiving.  He knew what was coming today, you know, and he

14   has made every court appearance, every appointment in our

15   office.

16          So in light of all of those circumstances, I would ask

17   that his bail be continued.

18          THE COURT:  OK.  Mr. Williams, does the government

19   want to be heard on it?

20          MR. WILLIAMS:  Your Honor, just very briefly.

21          I will say that Ms. Cross-Goldenberg has been

22   throughout this case very candid with our office about

23   Mr. Castro's health issues.  They have been heavily documented.

24   They have been reviewed by not only myself but my supervisors.

25   So we are very much aware of the problems that she laid out to

Dc4dcasp

Plea

1   the Court, and I can just give the Court assurance that they

2   have all been documented to us as well.

3          This is not a case where a defendant has some medical

4   problems, a case where he has some significant ones.  The

5   government has been comfortable with him being on bail.

6          And to the extent the Court is considering not

7   imposing a sentence of imprisonment, the government certainly

8   would not seek remand as a result of that possibility.

9          And just briefly, without getting into the, you know,

10  whether or not any term of imprisonment is deserved here,

11  because that is for a later date, I will point out that

12  Ms. Cross-Goldenberg is correct that Mr. Castro qualified for

13  relief under what's referred to as the Holder memo in light of

14  his conduct in this case, and, in addition to his conduct that

15  has qualified him for Holder relief, his health concerns are a

16  separate and independently significant matter which I think

17  inform the totality of the circumstances when your Honor is

18  considering whether exceptional circumstances exist to excuse

19  remand at this point.

20         THE COURT:  OK.  Well, I appreciate your being

21  forthcoming, Mr. Williams, with the government's position.

22         And there is a more than adequate showing of

23  exceptional circumstances that I will not remand the defendant.

24  The defendant is not a risk of flight or a danger to the

25  community and there are exceptional circumstances.

Dc4dcasp
                                    Plea

1             So sentencing is fixed for March the 14th at 10 a.m.

2             We have to give more time because the defendant is on

3     bail.  So sentence is April 18th at 10 a.m.

4             MS. CROSS-GOLDENBERG:  My calendar only goes to March

5     but I think April 18th sounds good to me.  Thank you, your

6     Honor.

7             THE COURT:  OK.  If there is a problem, please let me

8     know and we can adjust the date.

9             I'd ask for defense submissions at least 14 days

10    before sentence and government submission at least eight days

11    before sentence.  All right?

12            MR. WILLIAMS:  Yes.  Of course, your Honor.

13            MS. CROSS-GOLDENBERG:  Yes, your Honor.

14            And I will provide the Court with the documentation

15    that we had provided the government.

16            THE COURT:  OK.  Please make sure to get it to me, you

17    know, 14 days before sentence and eight days so that I have an

18    opportunity to consider all of that.  All right.

19            MS. CROSS-GOLDENBERG:  Thank you, your Honor.

20            MR. WILLIAMS:  Thank you.

21            THE COURT:  Good afternoon, all.

22            MS. CROSS-GOLDENBERG:  Thank you, your Honor.

23            THE COURT:  Oh, I am returning Court Exhibit 1 to the

24    government.  Thank you.

25                              -   -   -